UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF
AMERICA, et al.,

                                              Case No. 2:11-cv-11940

            Plaintiffs,

ex rel. AZAM RAHIMI,

            Plaintiff/Relator,              HONORABLE STEPHEN J. MURPHY, III

v.

RITE AID CORPORATION,

            Defendant.
_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO DISMISS [73]**

In May 2011, Relator Azam Rahimi ("Rahimi" or "Relator") filed his *qui tam*

complaint against Defendant Rite Aid Corporation ("Rite Aid") alleging violations of

the False Claims Act ("FCA") and analogous state laws. In June of 2011, the United

States sought an extension to consider whether to intervene. ECF 3 (under seal). The

Court granted the motion and administratively closed the case. In April 2013, the

Court reopened the case only to allow Rahimi to file an amended complaint. ECF 13.

Finally, in August 2016—after more than *five years* of extensions sought by the

Government—Rahimi filed a motion to reopen the case and set a deadline for

government intervention. ECF 29. The Court conducted a sealed hearing on the

motion and permitted Relator to file a second amended complaint ("SAC").

On November 18, 2016, Rahimi filed his second amended complaint. ECF 44. The Court reopened the case and set a deadline for the Government to notify the Court of its intention to intervene. ECF 45 (under seal). The United States and the several states declined to intervene. ECF 46, 47. Rahimi served Rite Aid. ECF 50. Rite Aid requested that discovery be stayed, ECF 54, and responded to the SAC with a motion to dismiss, ECF 55. The Court granted Rite Aid's motion to stay, ECF 68, and denied without prejudice Rite Aid's motion to dismiss, ECF 70.

On May 11, 2018, Relator filed his third amended complaint ("TAC"). ECF 71. Rite Aid again filed a motion to dismiss. ECF 73. The Court reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will deny Rite Aid's motion to dismiss.

## BACKGROUND

As the Court identified in its opinion on Rite Aid's first motion to dismiss, the allegations can be understood simply. Rahimi, a pharmacist, became suspicious of how Rite Aid billed certain government programs. Rahimi alleges that Rite Aid violated the FCA by submitting false claims to the Government and by failing to reimburse overpayments. The Court previously detailed the scheme, but, because Relator filed an amended complaint, the Court will repeat the general allegations here.

I.   <u>The Claims</u>

Relator's TAC contains nineteen counts. ECF 71. One count is for alleged violations of the FCA and eighteen counts allege violations of various state false

claims statutes.[1] In particular, the FCA count alleges violations of 31 U.S.C. §§ 3729(a)(1)(A), (a)(1)(B), and (a)(1)(G), which provide that liability attaches to any person who:

> (A): knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (B): knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
> (G): knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money . . . to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money . . . to the Government[.]

31 U.S.C. § 3729(a)(1)(A), (B), and (G).

II.    The Parts of the Scheme

The alleged fraudulent scheme involves several parts, but the three principal components include: (1) Rite Aid's Rx Savings Program ("Rx Program"), (2) Medicare Part D, and (3) the Medicaid and Medicare Part D[2] requirement that pharmacies charge government-insurance programs the "usual and customary charge to the general public" ("U&C"), *see* 42 C.F.R. § 447.332(b). The Court will briefly explain each component.

---

[1] Counts 2–19 include state or D.C. law claims for the following states: California, Colorado, Connecticut, Delaware, District of Columbia, Georgia, Indiana, Louisiana, Massachusetts, Michigan, Nevada, New Jersey, New York, North Carolina, Rhode Island, Tennessee, Virginia, and Washington (collectively "Relevant States"). *See* ECF 71, PgID 1389–93.

[2] Relator's TAC also includes allegations related to TRICARE. *See infra* "Background" Part IV.A.

*A. The Rx Program.*

Like many major pharmacies, Rite Aid offers hundreds of generic prescriptions at reduced prices through its Rx Program. ECF 71-2, PgID 1398. The Rx Program provided prescriptions at heavily reduced prices: a 30-day supply of certain generic drugs cost $8.99 and a 90-day supply of those drugs cost $15.99. *Id.* Enrollment in the Rx Program is free, and any person can join it—with one exception. The Rx Program's reduced prices do not extend to "[p]rescriptions paid for in whole or in part by publicly funded health care programs[.]" *Id.*

*B. Medicare Part D.*

Medicare Part D is a federal, voluntary prescription drug benefit program available to citizens eligible for Medicare. The Centers for Medicare and Medicaid Services ("CMS") oversees Medicare Part D. ECF 71, PgID 1332. CMS contracts with private insurance companies ("Part D Sponsors") that "compete for the opportunity to manage Part D beneficiaries' claim submissions and payment processes." *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 635 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 627 (2017). Part D Sponsors and their subcontractors then "work directly with retail pharmacies to provide prescriptions to Part D beneficiaries." *Id.* Part D Sponsors negotiate with the pharmacies to determine how much the pharmacy will be paid for the drugs they dispense to Medicare enrollees. ECF 71, PgID 1353.

*C. Usual and Customary Charge.*

When a pharmacy dispenses prescription drugs to Medicare enrollees, it submits a claim for payment to the federal government, through Part D Sponsors and

intermediaries with which it has contracted. CMS's payments for drugs must not exceed a provider's "usual and customary charges to the general public," or "U&C." 42 C.F.R. § 447.512(b). To comply with the limitation, "state Medicaid programs have enacted rules that require pharmacies to bill Medicaid no more than their [U&C]." ECF 71, PgID 1335. States' Medicaid programs define U&C differently, but nearly all of the Relevant States' programs specifically require pharmacies to disclose the U&C in a designated field when billing the state Medicaid program.[3] *See id.* at 1336.

III.     The Alleged Fraudulent Scheme

In the alleged scheme, Rite Aid charged Medicare Part D and state Medicaid programs prices that "significantly exceed[ed] the prices that Rite Aid has routinely offered customers through its 'Rx Savings' discount program." ECF 71, PgID 1330. Because the misrepresentations would tend to cause CMS to issue inflated reimbursements, Relator alleges the practice violated the False Claims Act, 31 U.S.C. §§ 3729–33.

IV.     The Third Amended Complaint

Relator's TAC adds to these general allegations in three broad ways. The Court describes the material amendments made in the TAC.

---

[3] California is the only Relevant State without the requirement. And "[t]he instructions to [California's] Med-Cal pharmacy claim forms have instructed pharmacies to include their 'usual and customary charge' in the 'charge' field." *Id.* at 1338.

*A. TRICARE.*

First, Relator adds allegations that Rite Aid's billing practices violated TRICARE, "a comprehensive health and prescriptions benefits plan for active duty and retired service members and their eligible beneficiaries" overseen by the Department of Defense. ECF 71, PgID 1333. TRICARE beneficiaries are not eligible for Rite Aid's Rx Program. *Id.* at 1360. But TRICARE requires participating pharmacies to charge their U&C. *Id.* at 1358–60. Relator therefore alleges that Rite Aid overcharged TRICARE—just as he alleges that it overcharged Medicare Part D and state Medicaid programs. *Id.* at 1362.

*B. John Doe's Knowledge.*

Second, Relator added allegations related to his friend, John Doe, who was a pharmacist at a Rite Aid in New York and upon whose knowledge Relator relies. Particularly, Relator alleges that "[t]hrough his direct experience billing customers and third-party payers, including Medicaid and Medicare Part D, for prescription drugs, John Doe learned that [Rite Aid's billing] software" does not generate an "Rx Savings price" for individuals not enrolled in the program—such as Medicaid and Medicare participants. ECF 71, PgID 1362. When utilized, the software "charged government health programs, including Medicare Part D and Medicaid, a price that Rite Aid represented was its 'U&C' but that" did not account for the prices given to the Rx Program's members. *Id.* at 1362–63. In this way, and absent "any intermediary . . . like a corporate billing department," "Rite Aid's pharmacists . . . are responsible for billing any liable third-party payers." *Id.* at 1363.

John Doe reviewed the "Details" screen after "he had charged medications on the Rx Savings Program list to a Medicare Part D or Medicaid plan," and thus "confirmed . . . that Rite Aid was charging Medicare Part D sponsors and Medicaid plans amounts that exceeded the Rx Savings Price." *Id.* at 1364.

John Doe then obtained specific examples of alleged false claims by recovering a customer's receipt, which he referenced with his knowledge from reviewing the "Details" screen. *Id.* at 1364–65.

*C. Representative Claims.*

Finally, Relator added numerous representative claims. *See* ECF 71, PgID 1374–86; *see also* ECF 71-3 (table of Massachusetts Medicaid false claims data), 71-4 (table of New York Medicaid false claims data), 71-5 (false claims data for fifteen additional state Medicaid programs), and 71-6 (Medicare Part D false claims data). Relator represents that the claims "are records of claims actually submitted to government health programs." ECF 71, PgID 1374.

## STANDARD OF REVIEW

The Court may grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,' and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the plaintiff, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in favor of the non-moving party. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If "a cause of action fails as a matter

of law, regardless of whether the plaintiff's factual allegations are true or not," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

To prevent "fishing expeditions," complaints alleging FCA violations must satisfy a heightened pleading standard. *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 503 n.11 (6th Cir. 2007) [hereinafter *Bledsoe II*]). In particular, FCA allegations must "comply with Rule 9(b)'s requirement that fraud be pled with particularity[.]" *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017), *reh'g en banc denied*, (Jan. 3, 2018). If a relator "pleads a complex and far-reaching fraudulent scheme," the relator "must provide 'examples of specific false claims submitted to the government pursuant to the scheme' in order to proceed to discovery on the scheme." *Id.* (quoting *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 768 (6th Cir. 2016)). "To plead fraud with particularity, the plaintiff must allege (1) the time, place, and content of the alleged misrepresentation, (2) the fraudulent scheme, (3) the defendant's fraudulent intent, and (4) the resulting injury." *Chesbrough*, 655 F.3d at 467 (internal quotation and citation omitted).

As in any other context, the Court construes the *qui tam* complaint in the light most favorable to the plaintiff, accepts all factual allegations as true, and must determine whether the complaint pleads enough facts to state a claim for relief that is plausible on its face. *See id.* (quoting *Twombly*, 550 U.S. 570).

**DISCUSSION**

I.  <u>Whether Relator Pleaded False Claims with Particularity</u>

Relator alleges violations of three subsections of § 3729(a)(1). Each subsection requires a different showing. The Court therefore will address each subsection separately.

*A. Section 3729(a)(1)(A) Claims.*

A claim "requires proof that the alleged false or fraudulent claim was 'presented' to the government." *Ibanez*, 874 F.3d at 914 (quoting *United States ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008)). "At the pleading stage, this standard is stringent;" Relator must allege the fraudulent scheme and "identify a representative false claim that was actually submitted to the government." *Id.* (citing *Chesbrough*, 655 F.3d at 470). An exception to the stringent particularity standard exists for relators with "specific personal knowledge supporting a strong inference that a false claim was submitted." *Id.* (internal quotation omitted). The Relator must describe, with particularity, the fraudulent scheme (i.e. step-by-step allegations of how the scheme works) and then "must provide a representative claim that describes each step with particularity[.]" *Id.* at 915.

Rite Aid argues that Relator's TAC insufficiently pleads representative false claims. First, Rite Aid faults Relator for not "identify[ing] the source of the information in the complaint." ECF 73, PgID 1464. But no authority requires a relator to plead the source of a representative claim. Regardless, Relator pleaded that "[t]he

claim information comes from either Rite Aid or the government health plan." ECF 71, PgID 1374.[4]

Second, Rite Aid argues that the "detailed personal knowledge of billing practices and specified identified claims" required by *Prather*[5] and *Ibanez* is missing. ECF 73, PgID 1464 (citing *Prather I*, 838 F.3d at 771; *Ibanez*, 874 F.3d at 916). But both *Prather* and *Ibanez* considered detailed personal knowledge of billing practices when analyzing the personal-knowledge exception to Rule 9(b)'s heightened pleading standard in FCA cases. *See Prather I*, 838 F.3d at 770–72; *Ibanez*, 874 F.3d at 915–16; *see also United States ex rel. Hirt v. Walgreen Co.*, 846 F.3d 879, 881 (6th Cir. 2017) (describing *Prather I* and its application of a relaxed pleading standard given the relator's personal knowledge). Rite Aid's argument about Relator's personal knowledge of billing practices is therefore misplaced. The argument applies only if Relator does not plead a specific false claim, but then relies upon the personal-knowledge exception to Rule 9(b)'s pleading requirement.[6]

---

[4] Relator also details the source of the information in his response brief. *See* ECF 77, PgID 1752 ("Most of the false claims pleaded in the TAC [(234 of the claims)] were voluntarily provided by 17 state Medicaid programs."); *id.* at 1754 ("12 false claims based on Rite Aid's own records," primarily customer receipts.); *id.* at 1756 ("The last category of sample claims alleged in the TAC are based on records of Plan D sponsors or the PBM that administers TRICARE.").

[5] *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750 (6th Cir. 2016) [hereinafter *Prather I*].

[6] Relator correctly notes that Rite Aid's motion conflates the two distinct inquiries. ECF 77, PgID 1757.

Finally, Rite Aid's central argument is that "Relator cannot produce any 'actual billing or invoice' showing a claim submitted by Rite Aid." ECF 73, PgID 1459. Rite Aid maintains that Relator's reliance "on a 'summary' of purported claims he prepared from second-hand information, as a substitute for personal knowledge of billing practices" does not qualify as "an actual billing or invoice." ECF 80, PgID 1954 (quoting *Chesbrough*, 655 F.3d at 477). Rite Aid further avers that the "summaries of alleged claims" do not include the U&C. Rite Aid concludes, "[s]uch summary allegations . . . fail to adequately plead the actual submission of a false claim." ECF 73, PgID 1464. Relator responds that Rite Aid's argument transforms the Rule 9(b) pleading standard into an evidentiary pleading standard. *See* ECF 77, PgID 1751.

Relator's TAC pleads "examples of specific false claims submitted to the government pursuant to [the alleged] scheme" sufficient "to proceed to discovery on the scheme." *Ibanez*, 874 F.3d at 914 (quoting *Prather I*, 838 F.3d at 768). Relator's representative claims include allegations that "an individual was covered" by a government-insurance program, "went to a Rite Aid pharmacy, sought a generic drug prescription, received that drug, the price between that drug for Rx Savings members and [government-insureds] differed, and Rite Aid actually billed the Government the higher price." ECF 70, PgID 1318 (describing *Ibanez*'s pleading requirements).

 Relator's representative claims include the following information. First, Relator pleads the date and location of a particular prescription purchase. Second, he pleads the claim number for the purchase. Third, Relator alleges that a certain prescription drug included in the Rx Program was purchased by a customer

participating in a government-funded insurance program. Fourth, he alleges that Rite Aid submitted a claim to a government entity for a certain amount. Fifth, he alleges that the amount charged exceeded the Rx Program's price for the prescription. *See, e.g.,* ECF 71, PgID 1375 ¶ 131a. Attached as exhibits are summaries of transactions that include much of the same information, except that the summaries (1) exclude the U&C price, and (2) *include the amount paid by the Government.* *Compare* ECF 71, PgID 1375 ¶ 131a *with* ECF 71-3, PgID 1418 (seventeenth row of data). When the data is combined, Relator's representative claims produce the following relevant information:

| State | Claim Number | Pharmacy Number | Date | Drug | Supply | Charged | U&C | Paid |
|---|---|---|---|---|---|---|---|---|
| MA | 251003457908 | 10213 | 2/3/10 | Lovastatin 40 MG tablet | 30-day | $69.99 | $8.99[7] | $14.83[8] |

Relator's TAC cures the previous problem with his allegations, namely that "they fail[ed] to show that the higher prices were actually submitted to the sponsors or state programs, and effectively, to CMS." ECF 70, PgID 1319. Relator's allegations—and the related exhibits—show that the Government paid more than the U&C on at least one occasion. For example, Relator's first Massachusetts

---

[7] ECF 71, PgID 1375. All information about the claims—except for the amount paid—is pleaded in the body of Relator's TAC. The Court excludes the "NDC"—national drug code—and the "days paid."

[8] ECF 71-3, PgID 1418.

representative claim alleges that the Government paid $14.83 for a 30-day supply of Lovastatin 40 mg tablets when the U&C is merely $8.99.[9]

Relator included similar claims for New York, Michigan, and Indiana. ECF 71, PgID 1376–81. Exhibits attached to the TAC included claims in New York, Michigan, Indiana, and thirteen additional states. *See* ECF 71-4, 71-5.

Relator's allegations contain much—if not all—of the information an invoice would include: claim number, date of purchase, product description and identifier, location of purchase, and amounts billed, charged, and *paid*. Taken as true, the inclusion of an amount paid by the Government demonstrates the actual submission of a bill to the Government. The specificity of Relator's allegations exceeds the allegations of relators in similar cases. *See, e.g., Ibanez*, 874 F.3d at 915 (relators alleged only "knowledge of a complex scheme related to the promotion" of a drug, but did not "provide any representative claim"); *Walgreen*, 846 F.3d at 881 (explaining that the relator did not identify names of customers—or other unique identifying information—the dates prescriptions were filled, the dates the pharmacy reimbursed claims, or even whether customers filled prescriptions); *Prather I*, 838 F.3d at 768 (Relator "did not allege information regarding the key fact that our cases have identified: The actual *submission* of a *specific* request for anticipated payment to the

---

[9] Rite Aid argues that the charged amount is not material, *see infra*. "Discussion" Part II. But the Massachusetts representative claim shows, in part, why Rite Aid's misrepresentation was material. Rite Aid could not have charged the Government $14.83 for the prescription and the lower of the two relevant pricing benchmarks because the U&C is less than $14.83. *See* 42 C.F.R. § 447.512(b) (listing the two pricing benchmarks).

government.") (emphasis in original); and *Chesbrough*, 655 F.3d at 472 (relators failed to plead that nondiagnostic tests were submitted to the government for billing). Here, Relator has alleged sufficient information to demonstrate the key fact: actual submission of a claim to the Government.[10]

Because Relator sufficiently pleaded a representative claim, the Court need not consider the parties' extensive discussion of whether Relator may rely on John Doe's personal knowledge as a Rite Aid pharmacist to qualify for the personal-knowledge exception to Rule 9(b)'s pleading requirements.

*B. Sections 3729(a)(1)(B) and (G) Claims.*

The Court's analysis related to § 3729(a)(1)(A) above applies with equal weight to Relator's claims under subsections (B) and (G). Claims under subsection (B) require Relator to "plead a connection between the alleged fraud and an actual claim made to the government" and the "alleged connection must be evident." *Ibanez*, 874 F.3d at 916 (quoting *Chesbrough*, 655 F.3d at 473 and referencing *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)). Subsection (G) claims must "allege facts that show defendants received overpayments from the government and failed to

---

[10] The Court need not address whether Rite Aid's argument requiring inclusion of an actual bill or invoice imposes an improper evidentiary standard. The Court agrees with Relator's comment, however, that, given pharmaceutical billing practices, inclusion of an actual bill or invoice is nearly impossible. *See* ECF 77, PgID 1750 n.1 (and accompanying text). If the Sixth Circuit's precedent required inclusion of an actual bill or invoice in a pleading, then *only* individuals with personal knowledge of a scheme could bring a *qui tam* case. In effect, the personal-knowledge exception to Rule 9(b)'s pleading standard would swallow the rule. The Sixth Circuit in *Prather I* likely did not intend to eliminate the general rule when it applied the personal-knowledge exception to that relator's allegations. *See generally Prather I*, 838 F.3d 750 (6th Cir. 2016).

refund those payments." *Ibanez*, 874 F.3d at 916 (citing 31 U.S.C. § 3729(a)(1)(G) and *Prather I*, 838 F.3d at 774). Alternatively, Relator can plead adequate "'proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation'—a duty to pay money or property." *Id.* (quoting *Chesbrough*, 655 F.3d at 473).

Rite Aid does not challenge the TAC's allegations under subsections (B) and (G). For the reasons explained above, Relator's representative claim satisfies the pleading requirements for a claim under subsection (B).

Relator further alleged that Rite Aid's charging scheme "avoided an obligation to repay funds owed the United States and the state Plaintiffs" and that Rite Aid did not "disclose" or "return overpayments." ECF 71, PgID 1387. Relator thus adequately pleaded a claim under subsection (G).

II.    Whether Relator Adequately Pleaded Materiality

Under the FCA, "a misrepresentation about compliance with a statutory, regulatory, or contractual requirement"—such as the U&C requirement—"must be material to the Government's payment decision." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016) [hereinafter *Escobar*]. Under § 3729, material means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 28 U.S.C. § 3729(b)(4). The FCA's materiality "standard is demanding." *Escobar*, 136 S. Ct. at 2003.

The Court's materiality analysis is holistic and considers several factors including: "(1) 'the Government's decision to expressly identify a provision as a

condition of payment;'" (2) whether the Government refuses to pay noncompliant claims, or "with actual knowledge of non-compliance, it consistently pays such claims" and it does not intend to stop payments; and (3) "whether the 'noncompliance is minor or insubstantial' or if it goes 'to the very essence of the bargain.'" *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 892 F.3d 822, 831 (6th Cir. 2018) [hereinafter *Prather II*] (quoting *Escobar*, 136 S. Ct. at 2003 & n.5), *cert. denied*, — S. Ct. —, 2019 WL 1231774 (Mem).

Rite Aid argues that Relator failed to plead materiality because: (1) the U&C's inclusion as a factor affecting payment is an insufficient allegation and (2) the Government continued to pay Rite Aid's claims after learning of Relator's allegations. ECF 73, PgID 1465–66.

A. *Express Condition of Payment.*

First, "the Government's decision to expressly identify a provision as a condition of payment is relevant" to the materiality analysis but is "not automatically dispositive." *Escobar*, 136 S. Ct. at 2003. Rite Aid must charge government insurance programs the lesser of either: the "[actual acquisition cost][11] plus a professional dispensing fee established by the agency" or the "[p]roviders' usual and customary charges to the general public." 42 C.F.R. § 447.512(b). The Government thus made charging the U&C price an express condition of payment. The factor weighs in favor of finding material Rite Aid's alleged overcharging.

---

[11] AAC stands for actual acquisition cost. *See* 42 C.F.R. § 447.502.

*B. Government Response to Allegations.*

Second, the Government's response to similar violations factors into the materiality analysis. Rite Aid argues that "the Government's continued payments of Rite Aid's claims after learning of Relator's allegations in May 2011" demonstrate a lack of materiality. ECF 73, PgID 1466. Rite Aid's argument is unavailing.

The Government's payment decisions may evince a requirement's lack of materiality in two situations. First, "[i]f the Government pays a *particular* claim in full despite its actual knowledge that certain requirements were violated." *Escobar*, 136 S. Ct. at 2003 (emphasis added). Second, "if the Government *regularly* pays a particular type of claim in full despite actual knowledge that certain requirements were violated" and signals "no change" of its payment behavior. *Id.* at 2003–04 (emphasis added). The present case touches upon only the second situation. *See, e.g.,* ECF 73, PgID 1467 ("Relator has failed to allege that after receiving full knowledge, the Government has ever ceased paying reimbursements to Rite Aid. On the contrary, the Government has allegedly continued paying claims based on the U&C reported.").

The second situation is not present here. Rite Aid's argument assumes that the Government *knows* that Rite Aid *violated* the U&C requirements. To succeed on its argument, Rite Aid must concede that it did violate the U&C's requirements and the Government possess "actual knowledge" of its violations. The Court does not construe Rite Aid's argument as making the concession.

Rite Aid's argument conflates "actual knowledge that certain requirements were violated" with actual knowledge of *allegations* that certain requirements were

violated. *Escobar*, 136 S. Ct. at 2003; *see also United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 112 (1st Cir. 2016) ("[M]ere awareness of allegations concerning noncompliance with regulations is different from knowledge of actual noncompliance."); *United States ex rel. Brown v. Pfizer, Inc.*, No. 05-6795, 2017 WL 1344365, at *11 (E.D. Pa. Apr. 12, 2017) ("The mere fact that the government continued to pay and approve claims . . . even after Relators' allegations in 2005 is insufficient to establish that Relators' claims lack materiality.").

Also, Rite Aid maintains that Relator "failed to allege that after receiving full knowledge," the Government refused to pay Rite Aid. ECF 73, PgID 1467. And that the failure precludes a finding of materiality. But, a relator "is not required to make allegations regarding past government action" because no factor is dispositive in the Court's materiality analysis. *See Prather II*, 892 F.3d at 834.

Rite Aid additionally places weight on the Government's decision not to intervene. ECF 73, PgID 1467. But the Government's non-intervention is not dispositive of materiality. *See Prather II*, 892 F.3d at 836 (citing *Escobar*, 136 S. Ct. at 1998). And to infer a lack of materiality from the Government's non-intervention would make the Government's non-intervention dispositive of the materiality analysis.

Finally, Rite Aid asks the Court to infer from the TAC's lack of allegations about the Government's continued payment that the U&C requirement is immaterial. Even if the Government decided to pay Rite Aid's prescription charges despite knowledge of violations, the payment decision would not necessarily reflect a

lack of materiality. For example, the Government may have continued to pay to avoid "adversely affecting[ing] the millions of Medicaid beneficiaries who rely on Rite Aid to meet their prescription needs." ECF 90, PgID 2050. And, even if the Government had paid, there is no evidence that the Government would refuse to change course at a later date. Drawing even a reasonable inference against Relator would "improperly inverse[] the [Rule 12(b)(6)] pleading standard." *Prather II*, 892 F.3d at 834.[12] The Court declines to draw that inference against the Plaintiff from the absence of the allegation in the TAC.

"Without allegations regarding past government action taken in response to known noncompliance" with the U&C requirement this factor does not impact the Court's materiality analysis. *Prather II*, 892 F.3d at 833–34.

### C. Essence of the Bargain.

Third, whether the alleged noncompliance "goes 'to the very essence of the bargain'" factors into the Court's materiality analysis. *Prather II*, 892 F.3d at 831. The Court's previous opinion acknowledged that the U&C may not always apply—for

---

[12] Rite Aid argues that Relator alleged that he disclosed his suspicions to the Government. *See* ECF 80, PgID 1957 (identifying Relator's allegation that he disclosed information to the Government); ECF 71, PgID 1332 ("Relator voluntarily provided the information set forth [in the TAC] to agents of the United States Department of Justice and the state plaintiffs.") But Relator's allegations about disclosures to the Government are not the same as allegations about the Government's payment decisions.

Rather, Rite Aid's argument in its motion to dismiss specifically relies upon Relator's failure to allege that "the Government has ever refused to reimburse Rite Aid for a medication or challenged the amount of reimbursement" or "that after receiving full knowledge, the Government has ever ceased paying reimbursements to Rite Aid." ECF 73, PgID 1466–67. Rite Aid does rely, therefore, on the absence of allegations about the Government's continued payment of Rite Aid's claims.

example, if another pricing benchmark required Rite Aid to charge a price lower than the U&C, *see* ECF 70, PgID 1325–26. But the TAC alleges that Rite Aid's scheme consistently disregarded the prescription prices afforded members of the Rx Program when calculating its U&C for charges to government-backed insurance programs. ECF 71, PgID 1361–62. Based on Relator's allegations, Rite Aid's misstatements were material because "those claims were the basis of the federal monies [Rite Aid] received." *Garbe*, 824 F.3d at 639.

Rite Aid disagrees with the Court's previous statement that "the U&C price is a factor in determining how much CMS will reimburse pharmacies." ECF 73, PgID 1465 (quoting ECF 70, PgID 1325). Rite Aid concludes that "[t]he fact that a particular factor might affect payment is insufficient to establish materiality." ECF 73, PgID 1465–66. Rite Aid supports its conclusion by arguing that it is not "sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance." *Id.* at 1466 (citing *Escobar*, 136 S. Ct. at 2003. But the Government agrees to contract with Rite Aid to pay for prescriptions of Medicare, Medicaid Part D, and TRICARE participants because Rite Aid agrees to charge its U&C. *See supra* "Background," Part II.C. If Rite Aid overcharges, however, the conduct affects the essence of the bargain.

### D. Rite Aid's Cases in Support.

Rite Aid relies on several cases to bolster its argument that Relator's claims should be dismissed for lack of materiality. *See* ECF 73, PgID 1467–68. The cases are unpersuasive. First, Rite Aid relies upon *United States ex rel. Prather v. Brookdale*

*Senior Living Cmtys., Inc.*, 265 F. Supp. 3d 782 (M.D. Tenn. 2017), but *Prather II* reversed and remanded the district court in that case after finding that the requirement at issue was material. *See Prather II*, 892 F.3d at 836, 838.

Second, Rite Aid cites *Coyne v. Amgen, Inc.*, 717 F. App'x 26 (2d Cir. 2017), to support dismissal. The *Coyne* relator failed to "connect his allegations to the submissions of false claims." 717 F. App'x at 29. Here, Relator presented "concrete allegations from which the court may draw the reasonable inference that the misrepresentations" of Rite Aid's U&C "caused the Government to make the reimbursement decision." *Id.* (citation omitted).

Third, Rite Aid points to several district court cases: *United States ex rel. Kolchinsky v. Moody's Corp.*, No. 12cv1399, 2018 WL 1322183 (S.D.N.Y. Mar. 13, 2018); *In re Plavix Mktg., Sales Practice and Prods. Liab. Litig. (No. II)*, 332 F. Supp. 3d 927 (D.N.J. 2017); *United States v. Strock*, No. 15-CV-0887-FPG, 2018 WL 647471 (W.D.N.Y. Jan. 31, 2018).[13]

---

[13] Rite Aid's reply brief cites three additional cases. None changes the Court's analysis. In one case, the relator "concede[d] that the Government would have paid the claims with full knowledge of the alleged noncompliance." *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017). Relator did not make such a concession here.

The second case's analysis of the Government's continued payment conflated actual knowledge of violations with actual knowledge of alleged violations. *See United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 865 F.3d 29, 35 (1st Cir. 2017). For the reasons already stated, the Court does not find the proposition persuasive. The court in the third case did not contest the United States' argument that a price reduction requirement may be material to Government payment but granted the motion to dismiss because the relator's pleadings pointed only to the regulations. *See Knudsen v. Sprint Commcn's Co.*, Nos. C13-04476 CRB; C13-4465 CRB; C13-4542 CRB, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016). Relator here offered sufficient allegations to satisfy the Sixth Circuit's holistic materiality standard.

The *Kolchinsky* decision considered only the Government's decision to continue paying and not the other factors identified by *Escobar* and *Prather II. See Kolchinsky*, 2018 WL 1322183, at \*4. The relator in *In re Plavix* conflated a causation argument with materiality. *See* 2017 WL 2780744, at \*14–\*15. Detrimental to the *Plavix* relator's case was that the allegedly false claim was made prior to the submission of a claim for payment. *Id.* The *Strock* case is similarly inapposite. *Strock* dealt with certain qualifications for an award of contracts, not whether the Government paid contracts. *See* 2018 WL 647471, at \*9–\*10. Here, Relator alleges that Rite Aid misrepresented the U&C *when submitting* claims to the Government and the Government relied upon the misstatements when paying the claims. The cases Rite Aid cites in support are not persuasive. Relator sufficiently pleaded materiality.

III.     Relator's California Claims

Rite Aid also argues that the TAC fails to state an FCA claim as to California because of unique litigation of California's U&C laws. ECF 73, PgID 1468. The argument relies on a now-dissolved injunction that enjoined enforcement of California's law on Medicare reimbursements. *See Cal. Pharmacists Ass'n v. Maxwell-Jolly*, No. CV 09-8200, 2011 WL 11507584 (C.D. Cal. May 5, 2010) (ECF 55-2). The injunction affected portions of California law requiring pharmacies to submit their U&C when billing the state program and to keep historical records of their U&C. *See* ECF 55-2, PgID 718 (citing Cal. Wel. & Inst. § 14105.455 (2009)). The injunction lasted from May 5, 2010 to July 5, 2016. ECF 70, PgID 1326.

Rite Aid renews its previous argument that the injunction made California's U&C requirements unenforceable and rendered Relator's claims arising during the pendency of the injunction unactionable. *See* ECF 73, PgID 1468 ("Rite Aid respectfully requests that the Court reconsider its determination."); 1469 n.7 ("Rite Aid incorporates by reference the arguments set forth in its Motion to Dismiss the Second Amended Complaint . . . rather than duplicating those arguments here."). Relator objected that Rite Aid's arguments were an improper motion for reconsideration. *See generally* ECF 76, 79.

Rite Aid filed an additional authority in support of its argument to dismiss Relator's California-based claims. ECF 81. Rite Aid's supplemental authority is a state court decision granting a pharmacy's demurrer because the alleged violations occurred at the time that "enforcement of [California's U&C] provisions was enjoined." ECF 81, PgID 1973. Rite Aid avers that the state court case "confirms Rite Aid's understanding of the scope of the injunction." *Id.* at 1965. But the state court case is clearly distinguishable from Relator's because, as the Court previously noted, "Relator's claims both predate and postdate the injunction." ECF 70, PgID 1326.

The Court previously denied Rite Aid's motion to dismiss Relator's California claims because it found "no grounds to dismiss [Relator's] California claims at th[e] early date." *Id.* Rite Aid's reincorporated argument and supplemental authority do not convince the Court to change its previous determination on Relator's California claims.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss [73] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant shall **FILE** an answer to the Third Amended Complaint **within 30 days of the date of this Order**.

**SO ORDERED**.

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 30, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2019, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager
