# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

```
-------------------------------------------------x
UNITED STATES OF AMERICA, et al.)
                                )   Case No. 2:11-11940-SJM
                    Plaintiffs,  )
                                )   Hon. Stephen J. Murphy, III
ex rel. AZAM RAHIMI              )
                                )
      v.                        )
                                )
RITE AID CORPORATION,           )
                                )
                    Defendant.   )
                                )
-------------------------------------------------x
```

## DEFENDANT RITE AID CORPORATION'S
## MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
## JURISDICTION AND FOR JUDGMENT ON THE PLEADINGS

Defendant Rite Aid Corporation ("Rite Aid") moves to dismiss certain of Relator's claims for lack of subject matter jurisdiction and moves for judgment on the pleadings on the remaining claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c), and the authorities cited in the brief filed in support of this motion.

In accordance with Local Rule 7.1(a) and this Court's motion practice guidelines, counsel for Rite Aid contacted Relator's counsel regarding concurrence with this Motion but did not receive concurrence in the relief sought.

WHEREFORE, Rite Aid respectfully requests that this Court enter an order dismissing the Third Amended Complaint with prejudice and/or entering judgment in Rite Aid's favor.

Dated:  July 31, 2019

*/s/ Kevin J. Biron*
Eric W. Sitarchuk
Kelly A. Moore
John K. Gisleson
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Eric.Sitarchuk@morganlewis.com
Kelly.Moore@morganlewis.com
John.Gisleson@morganlewis.com
Kevin.Biron@morganlewis.com

Thomas G. McNeill (P36895)
Robert P. Zora (P74231)
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Ste. 4000
Detroit, MI 48226
Telephone: (313) 223-3632
TMcNeill@dickinsonwright.com
RZora@dickinsonwright.com

*Attorneys for Defendant Rite Aid Corporation*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

------------------------------------------------------x

UNITED STATES OF AMERICA, et al.)

                                )   Case No. 2:11-11940-SJM

            Plaintiffs,    )

                                )   Hon. Stephen J. Murphy, III

ex rel. AZAM RAHIMI           )

                                )

     v.                    )

                                )

RITE AID CORPORATION,    )

                                )

            Defendant.    )

                                )

------------------------------------------------------X

## DEFENDANT RITE AID CORPORATION'S
## BRIEF IN SUPPORT OF ITS MOTION TO
## DISMISS FOR LACK OF SUBJECT MATTER
## <u>JURISDICTION AND FOR JUDGMENT ON THE PLEADINGS</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

ISSUES PRESENTED........................................................................v

CONTROLLING AND MOST APPROPRIATE AUTHORITY ......................... vii

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS ....................................................................4

ARGUMENT ..................................................................................12

    I.     RAHIMI'S FCA CLAIM FAILS UNDER THE PUBLIC
          DISCLOSURE BAR ......................................................12

        A.    Before Rahimi Filed Suit, There Were Public Disclosures
            of the Allegation that Rite Aid Was Not Offering Its Rx
            Savings Program Prices to Publicly Funded Health Care
            Programs ...............................................................13

        B.    Rahimi's Claim Is "Based Upon" the Public Disclosures .......18

        C.    Rahimi Is Not an "Original Source" .......................................19

            1.    Pre-Amendment Version of the FCA ............................19

            2.    Post-Amendment Version of the FCA .........................20

    II.    THE COURT SHOULD DISMISS RAHIMI'S STATE LAW
          CLAIMS ...........................................................................24

CONCLUSION .................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Cause of Action v. Chi. Transit Auth.*,
815 F.3d 267 (7th Cir. 2016) ................................................................23

*Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*,
508 F.3d 327 (6th Cir. 2007) ...............................................................11

*Dingle v. Bioport Corp.*,
388 F.3d 209 (6th Cir. 2004) ...........................................3, 4, 13, 14

*In re Natural Gas Royalties*,
562 F.3d 1032 (10th Cir. 2009) ..........................................................17

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
No. 13-13229, 2014 WL 2863871 (E.D. Mich. June 24, 2014) ......................4, 5

*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
563 U.S. 401 (2011) ...........................................................................12

*U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*,
816 F.3d 428 (6th Cir. 2016) ...........................................12, 13, 20, 21

*U.S. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*,
436 F.3d 726 (7th Cir. 2006) ..............................................................17

*U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*,
No. 5:13-CV-2145, 2015 WL 7575937 (N.D. Ohio Nov. 25, 2015)
*aff'd*, 842 F.3d 430 (6th Cir. 2016) ..................................................4, 14

*U.S. ex rel. Hastings v. Wells Fargo Bank Nat'l Ass'n (Inc.)*,
No. 12-cv-03624 DDP SSX, 2014 WL 3519129 (C.D. Cal. July 15,
2014), *aff'd*, 656 F. App'x 328 (9th Cir. 2016) ...................................18

*U.S. ex rel. Lager v. CSL Behring, L.L.C.*,
855 F.3d 935 (8th Cir. 2017) ..............................................................17

*U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*,
835 F. Supp. 2d 341 (E.D. Mich. 2011) .........................................22, 23

*U.S. ex rel. Morgan v. Express Scripts, Inc.*
   No. 2:05-CV-1714 DMC JAD, 2013 WL 6447846 (D.N.J. Dec. 9,
   2013), *aff'd sub nom. U.S. v. Express Scripts, Inc.*, 602 F. App'x
   880 (3d Cir. 2015) ................................................................................17

*U.S. ex rel. Osheroff v. HealthSpring, Inc.*,
   938 F. Supp. 2d 724 (M.D. Tenn. 2013) .....................................14, 15

*U.S. ex. rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) ....................................................14, 15

*U.S. ex rel. Poteet v. Medtronic, Inc.*,
   552 F.3d 503 (6th Cir. 2009) .....................................................passim

*U.S. ex rel. Rahimi v. Rite Aid Corp.*,
   No. 2:11-11940-SJM, 2018 WL 1744796 (E.D. Mich. Apr. 11,
   2018) ...........................................................................................22, 23

*U.S. ex rel. Ribik v. HCR ManorCare, Inc.*,
   No. 1:09-CV-00013, 2017 WL 3471426 (E.D. Va. Aug. 10, 2017) .................24

*U.S. ex. rel. Stratienko v. Chattanooga-Hmilton Cty. Hosp. Auth.*,
   958 F. Supp. 2d 846 (E.D. Tenn. 2013)................................................24

*U.S. ex rel. Winkelman v. CVS Caremark Corp.*,
   827 F.3d 201 (1st Cir. 2016).......................................................passim

*U.S. v. Chattanooga-Hamilton Cty. Hosp. Auth.*,
   782 F.3d 260 (6th Cir. 2015) ....................................................4, 6, 11

*Walburn v. Lockheed Martin Corp.*,
   431 F.3d 966 (6th Cir. 2005) ...........................................................18

## STATUTES

31 U.S.C. 3170(e)(4).....................................................................passim

Cal. Gov't Code § 12652 .................................................................24

Colo. Rev. Stat. Ann. § 25.5-4-306........................................................24

Conn. Gen. Stat. Ann. § 17b-301i........................................................24

Conn. Gen. Stat. § 17b-226a ..............................................................9

D.C. Code Ann. § 2-381.01 ........................................................................24

Del. Code Ann. tit. 6, § 1206 ....................................................................24

Ga. Code Ann. § 49-4-168.2 ......................................................................24

Ind. Code Ann. § 5-11-5.5-7 ......................................................................24

La. Stat. Ann. § 46:439.1 ..........................................................................24

Mass. Gen. Laws Ann. ch. 12, § 5G ........................................................24

Mich. Comp. Laws Ann. § 400.610a .........................................................24

N.C. Gen. Stat. Ann. § 1-611 ....................................................................24

N.J. Stat. Ann. § 2A:32C-9 .......................................................................24

N.Y. State Fin. Law § 190 .........................................................................24

Nev. Rev. Stat. Ann. § 357.100 .................................................................24

Tenn. Code Ann. § 71-5-183 .....................................................................24

Va. Code Ann. § 8.01-216.8 ......................................................................24

Wash. Rev. Code Ann. § 74.66.080 ...........................................................24

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b) ........................................................................4, 6, 13

Fed. R. Civ. P. 12(c) ...................................................................................13

Fed. R. Evid. 201 .........................................................................................4

## ISSUES PRESENTED

1.  Whether the portion of Relator's claim under the federal False Claims Act ("FCA") (Count One in the Third Amended Complaint) arising from Rite Aid Corporation's alleged billing practices <u>before</u> March 23, 2010 should be dismissed under Fed. R. Civ. P. 12(b)(1) and 31 U.S.C. § 3730(e)(4) (pre-March 23, 2010 amendment) because the factual allegation underlying Relator's claim was "publicly disclosed" before he filed this action and he is not an "original source."

    Defendant's Answer:  **Yes.**

2.  Whether the portion of Relator's claim under the FCA (Count One in the Third Amended Complaint) arising from Rite Aid Corporation's alleged billing practices <u>on or after</u> March 23, 2010 should be dismissed under Fed. R. Civ. P. 12(c) and 31 U.S.C. § 3730(e)(4) (post-March 23, 2010 amendment) because the factual allegation underlying Relator's claim was "publicly disclosed" before he filed this action and he is not an "original source."

    Defendant's Answer: **Yes.**

3.  Whether Relator's claims under various state false claims statutes (Counts Two through Nineteen in the Third Amended Complaint) should be dismissed (i) under Fed. R. Civ. P. 12(c) and the public disclosure bars in

those state statutes because the factual allegation underlying Relator's claim was "publicly disclosed" before he filed this action and he is not an "original source" or (ii) alternatively, because the Court should decline to exercise supplemental jurisdiction over the state law claims after dismissal of the FCA claim.

Defendant's Answer:  **Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITY

- 31 U.S.C. § 3730(e)(4)

- *Winkelman v. CVS Caremark Corp.*, 827 F.3d 201 (1st Cir. 2016)

- *U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428 (6th Cir. 2016)

- *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009)

- *Dingle v. Bioport Corp.*, 388 F.3d 209 (6th Cir. 2004)

- *U.S. ex rel. Armes v. Garman*, 719 F. App'x 459 (6th Cir. 2017)

- *McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341 (E.D. Mich. 2011)

- *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, No. 5:13-CV-2145, 2015 WL 7575937 (N.D. Ohio Nov. 25, 2015) *aff'd*, 842 F.3d 430 (6th Cir. 2016)

- *U.S. ex rel. Ribik v. HCR ManorCare, Inc.*, No. 1:09-CV-00013, 2017 WL 3471426 (E.D. Va. Aug. 10, 2017)

- *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401 (2011)

- *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805 (11th Cir. 2015)

- *U.S. ex rel. Lager v. CSL Behring, L.L.C.*, 855 F.3d 935 (8th Cir. 2017)

- *In re Natural Gas Royalties*, 562 F.3d 1032 (10th Cir. 2009)

- *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267 (7th Cir. 2016)

## PRELIMINARY STATEMENT

The public disclosure bar in the federal False Claims Act ("FCA") forecloses parasitic *qui tam* lawsuits based on information that was publicly disclosed before the relator filed suit.  *See* 31 U.S.C. § 3730(e)(4).  This is such a lawsuit.

At its core, this lawsuit is based on a single factual allegation:  Rite Aid did not give Medicaid, Medicare Part D, and certain other publicly funded health care programs the reduced drug prices that it provided to enrollees in its membership discount program.  Not only was that allegation publicly disclosed before Relator commenced this lawsuit in May 2011, but the federal government had already announced that it was investigating whether large chain pharmacies like Rite Aid were engaging in this supposed fraudulent conduct.  The dispositive pre-suit public disclosures include:

- The advertisements for Rite Aid's membership discount program, which were, *inter alia*, posted on its website, clearly stated "[p]rescriptions paid for in whole or in part by publicly funded health care programs are ineligible" for the membership discount program's reduced prices.

- By the end of 2008, Rite Aid, CVS, Walgreens, Kmart, and other chain pharmacies were all offering membership discount programs that provided enrollees with reduced prices on certain prescription drugs.

- In 2009-2010, the press reported that large chain pharmacies were not

providing Medicare Part D, Medicaid, and other publicly funded health care programs with the reduced drug prices offered through their membership discount programs.

- In October 2009 (and again in October 2010), the Office of Inspector General for the Department of Health and Human Services announced that it was investigating whether large chain pharmacies like Rite Aid were providing Medicaid and Medicare Part D with the reduced drug prices offered through their membership discount programs. (The federal and state governments elected not to intervene in this lawsuit.)

- In August 2010, the press reported that in response to Connecticut passing a law that for the first time required pharmacies to charge Connecticut Medicaid the same reduced prices offered through their membership discount programs, Rite Aid raised the prices offered through its membership discount program in only Connecticut (confirming that Rite Aid had not been charging Medicaid the reduced prices available through its membership discount program).

Taken together, these public disclosures, along with the others detailed below, revealed the supposed fraud alleged in this *qui tam* lawsuit. *See, e.g.*, *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 210 (1st Cir. 2016) ("*Winkelman v. CVS*") (affirming dismissal of substantially similar *qui tam* action

under the public disclosure bar); *Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004) (affirming dismissal under the public disclosure bar and holding "[a]ll that is required is that public disclosures put the government on notice to the possibility of fraud").

While the public disclosure bar contains an "original source" exception, Relator, who never worked for Rite Aid, does not qualify.  He did not provide any information to the government regarding his allegations <u>until after</u> the supposed fraud had been publicly disclosed, and the information he did ultimately provide was <u>not</u> based on "independent" knowledge (he had none), let alone knowledge that "materially adds" to the public disclosures.  The only documents he provided to the government before filing were: (i) two of Rite Aid's publicly disclosed advertisements that stated "<u>[p]rescriptions paid for in whole or in part by publicly</u> <u>funded health care programs are ineligible</u>" for the membership discount program's reduced prices and (ii) two receipts apparently showing that—consistent with its public disclosure—Rite Aid did not charge the reduced membership price for prescriptions paid for in whole or in part by Medicaid.

Relator's state law claims are similarly barred by the public disclosure rules in the relevant state statutes.  Alternatively, the Court should decline to exercise jurisdiction over those claims after dismissal of the FCA claim.

This action should be dismissed in its entirety.

## STATEMENT OF FACTS[1]

As widely reported in the news media, by the end of 2008, chain pharmacies, including Rite Aid, CVS, Walgreens, and Kmart, had launched membership discount programs that provided their members with reduced prices on generic prescription drugs. *See, e.g.*, Laura Klepacki, *Discount generics programs flood retail; Special Report: Generic Drugs*, Drug Store News, Nov. 17, 2008 (Ex. A); Francesca Lunzer Kritz, *Your Money; Your Health: Deals on generic drugs*, L.A. Times, Mar. 16, 2009 (Ex. B); Jessica L. Czechowski, *et al.*, *Deeply discounted medications: Implications of generic prescription drug wars*, J. of Am. Pharmacists Ass'n, Nov. 5, 2010 (Ex. C).

Rite Aid's 2008 press release announcing the nationwide rollout of its membership discount program, which is called the "Rx Savings Program," disclosed that "[p]ersons receiving benefits from publicly funded health care

---

[1] Rite Aid respectfully requests that the Court take judicial notice of the press releases, news articles, public webpages, materials posted on Rite Aid's website, and government reports that are cited herein. *See, e.g.*, Fed. R. Evid. 201; *U.S. ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, No. 5:13-cv-2145, 2015 WL 7575937, at *6-7 (N.D. Ohio Nov. 25, 2015) (taking judicial notice of documents and information posted on public websites, press releases, and news articles), *aff'd*, 842 F.3d 430 (6th Cir. 2016); *Dingle*, 388 F.3d at 211 (affirming dismissal and recognizing the district court took judicial notice of government report and news article); *Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871. At *4 (E.D. Mich. June 24, 2014) (taking judicial notice of archived webpages). The Court may also consider these materials because the motion includes a "factual attack on subject matter jurisdiction." *See, e.g.*, *U.S. v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 782 F.3d 260, 265 (6th Cir. 2015). Exhibits submitted herewith are cited as "Ex. _."

<u>programs are ineligible</u>." *Free Rite Aid Rx Savings Card Available September 29 At All Rite Aid Stores Nationwide So Americans Can Save on More Than 10,000 Prescription Drugs,* Rite Aid Press Release, Sept. 25, 2008, *available at* https://web.archive.org/web/20081021091522/http:/www.riteaid.com/company/news/news_details.jsf?itemNumber=1090 (Ex. D).[2]  This press release was picked up by the national news media.  *E.g.*, *Free Rite Aid Rx Savings Card Available September 29 At All Rite Aid Stores Nationwide So Americans Can Save on More Than 10,000 Prescription Drugs*, Bus. Wire, Sept. 25, 2008 (Ex. E).  In 2008 and 2009, Rite Aid issued numerous other press releases that all contained this same disclosure. *See, e.g.*, *Rite Aid Expands List of Generic Medications Available At Significant Cost Savings With Free Rite Aid Rx Savings Card,* Rite Aid Press Release, Nov. 13, 2008, *available at* https://web.archive.org/web/20081229124514/http://www.riteaid.com/company/news/news_details.jsf?itemNumber=1106   (Ex. F); *Georgia Rite Aid Pharmacies Offer Free 30-Day Prescription Of More Than 300 Commonly Prescribed Generics When Patients Sign Up for Free Rite Aid Rx Savings Card Now Through June 30, 2009*, Rite Aid Press Release, Mar. 30, 2009,

---

[2]   Courts have determined that the Internet Archive, found at https://web.archive.org, is an acceptable source for taking judicial notice of historical versions of webpages.  *See, e.g.*, *Pond Guy, Inc.* 2014 WL 2863871, at *4; *U.S. ex rel. Hong v. Newport Sensors*, Inc., No. 13-1164, 2016 WL 8929246, at *3 (C.D. Cal. May 19, 2016) (granting motion to dismiss based on the public disclosure bar), *aff'd* 728 F. App'x 660 (9th Cir. 2018).  The web addresses herein that begin with https://web.archive.org link to webpages that were accessible on Rite Aid's or other public websites before Relator commenced this action.

*available at* https://web.archive.org/web/20101203125532/http:/www.riteaid.com/ company/news/news_details.jsf?itemNumber=1141 (Ex. G).  Rite Aid posted all the foregoing press releases on its website.  *See id.*; *see also* Ex. AA (Affidavit of Gayle Rife).[3]

Rite Aid's pre-2011 advertisements for the Rx Savings Program also clearly stated that "[p]rescriptions paid for in whole or in part by publicly funded health care programs are ineligible" for the program's discounted drug prices.  *See, e.g.*, Compl. (ECF 1) ¶ 41, Ex. A (Rite Aid Rx Savings Program 2010 Advertisements); *Directory of Generic Medications Eligible for Rx Savings Program Flat Fees*, Rite Aid  Webpage,  Dec.  3,  2010,  *available  at*  https://web.archive.org/web/ 20101203115513/http://www.riteaid.com/www.riteaid.com/w-content/images/phar macy/RA_RXSavings_Directory_081710.pdf  (Ex.  H);  *Directory  of  Generic Medications Eligible for Rx Savings Program Flat Fees, Conn. Version*, Rite Aid Webbage, Dec. 3, 2010, *available at* https://web.archive.org/web/20101203115353 /http://www.riteaid.com/www.riteaid.com/w-content/images/pharmacy/CT_RX_Sa vings_Directory_081710.pdf  (Ex. I).   Those  advertisements  were  publicly available on Rite Aid's website and in Rite Aid-branded pharmacies.  *See id.*; *see*

---

[3] On the Fed. R. Civ. P. 12(b)(1) motion, the Court may consider the affidavits submitted herewith (Exs. AA-BB).  *See Chattanooga-Hamilton*, 782 F.3d at 265. Although Rite Aid does not believe consideration of these affidavits is necessary for the Court to find in its favor, they provide context for how Rite Aid's press releases and marketing materials were publicly disseminated.

*also* Ex. BB (Affidavit of Karin Long).  In addition, Rite Aid's main webpage for the Rx Savings Program in 2010 made the same disclosure in prominent, bold text.

*Free Rx Savings Program.  Save up to 20% on thousands of prescriptions $8.99 for 30-day supply of over 500 generics,* Rite Aid Webpage, Aug. 21, 2010, *available at* https://web.archive.org/web/20100821233436/http:/www.riteaid.com: 80/pharmacy/rx_savings.jsf (Ex. J).

In 2009 and 2010, the news media reported that certain large chain pharmacies were not providing Medicare Part D, Medicaid, and other publicly funded health care programs with the reduced generic drug prices offered through their membership discount programs.  *E.g.*, David Shaffer, *WHISTLEBLOWER; 'Low-cost' generic drugs not cheap for all; Walgreens and some other pharmacies charge more if the government is buying*, Star Tribune, Mar. 26, 2009 (Ex. K); *Change to Win Study Shows Drug Manager CVS Caremark Charges More for Generic Drugs to Federal Employees and US Government than Walk-in Customers*, Bus. Wire, Feb. 3, 2010 (Ex. L).  Also in 2010, the United States District Court for the Central District of California unsealed a *qui tam* complaint filed on July 6, 2008, alleging that Kmart pharmacies violated the FCA by charging Medicaid, Medicare Part D, and other publicly funded health care programs more than the reduced prices available through Kmart's membership discount program.  *See* Compl., *U.S. ex rel. Garbe v. Kmart Corp.*, 2:08-cv-04669-

MWF-SH (C.D. Cal. July 16, 2008) (Ex. M); Order, *U.S. ex rel. Garbe v. Kmart Corp.*, 2:08-cv-04669-MWF-SH, ECF No. 18 (C.D. Cal. Sept. 10, 2010).

In 2009 and again in 2010, the Office of Inspector General for the Department of Health and Human Services ("OIG-HHS") publicly announced an investigation into whether "large chain pharmacies" were providing Medicaid and Medicare Part D sponsors with the reduced prices on generic prescription drugs offered through their membership discount programs. Exs. O-P. As Relator acknowledges, Rite Aid was the third largest chain pharmacy in the country during this time-period. Compl. (ECF 1) ¶ 19 ("Defendant Rite Aid is the third largest retail drugstore chain in the United States based on revenues and number of stores."); *see also* Melissa Korn & Tess Stynes, *Rite Aid Posts Narrower Loss*, Wall St. J., Dec. 17, 2010 (Ex. N).

Specifically, the OIG-HHS's 2010 and 2011 Work Plans (publicly released in, and effective as of, October 2009 and October 2010, respectively) stated:

> Medicaid Claims for Drugs Purchased Under Retail Discount Generic Programs: **We will review Medicaid claims for generic drugs to determine the extent to which large chain pharmacies are billing Medicaid the usual and customary charges for drugs provided under their retail discount generic programs.** These discount programs typically offer selected generic drugs to anyone with a prescription for $4 for a 30-day supply or $10 for a 90-day supply. **Federal regulations at 42 CFR § 447.512 require, with certain exceptions, that each State Medicaid agency's reimbursement for covered generic outpatient drugs without established**

**upper limits may not exceed (in the aggregate) the lower of the estimated acquisition cost for drugs, plus a reasonable dispensing fee, or the provider's usual and customary charge to the public for the drugs.**

\*\*\*

Drug Costs Paid by Part D Sponsors Under Retail Discount Generic Programs: We will review drug costs for specific Part D-covered drugs on [prescription drug event ("PDE")] records to determine whether contracted prices between pharmacies and Part D sponsors were accurately reflected. . . . **We will also review contracts between sponsors and pharmacies and PDE records to determine the extent to which sponsors and the Federal Government have benefited from retail discount generic programs.**

*Office of Inspector General FY 2010 Work Plan*, OIG-HHS, Oct. 2009, at 40, 54, *available at* https://web.archive.org/web/20100610173346/https://oig.hhs.gov/ publications/docs/workplan/2010/Work_Plan_FY_2010.pdf (Ex. O); *Office of Inspector General FY 2011 Work Plan*, OIG-HHS, Oct. 2010, at II-10, III-11, *available at* https://web.archive.org/web/20101010152129/https://oig.hhs.gov/ publications/workplan/2011/FY11_WorkPlan-All.pdf (Ex. P) (emphasis added). These Work Plans were posted on the OIG-HHS website. *Id.* The news media also reported on the OIG-HHS's announcement of this investigation. *United States: 2010 Work Plan Expands Health Reform Reviews*, Mondaq Business Briefing, Oct. 14, 2010, at 11 (Ex. Q).

In May 2010, Connecticut passed a law that for the first time required pharmacies to charge Connecticut Medicaid the same reduced prices offered

through their membership discount programs.  *See* Conn. Gen. Stat. § 17b-226a. National and local news media reported extensively on Rite Aid's and CVS's reactions to this new law:  <u>in response to the new Connecticut law, Rite Aid raised its Rx Savings Program prices only in Connecticut</u>, and CVS threatened to terminate its membership discount program only in Connecticut.  *See, e.g.*, *Governor Rell Calls on Rite Aid to Restore Customer Pharmacy Savings*, Targeted News Service, Aug. 20, 2010 (Ex. R); *Attorney General, DCP Issue Subpoena Regarding Price Increases, Changes in Rite Aid Drug Discount Program*, Conn. Attorney General's Office Press Release, Aug. 25, 2010, *available at* https://portal.ct.gov/AG/Press-Releases-Archived/2010-Press-Releases/Attorney-General-DCP-Issue-Subpoena-Regarding-Price-Increases-Changes-In-Rite-Aid-Drug-Discount-Prog (Ex. S); *Conn. AG Probing Rite Aid on price increases*, Reuters, Aug. 25, 2010 (Ex. T); *Attorney General, DCP Issue Subpoena Regarding Price Increases, Changes in Rite Aid Drug Discount Program*, Targeted News Service, Aug. 25, 2010 (Ex. U); Cara Baruzzi, *State probes Rite Aid's pricing?*, New Haven Register, Aug. 26, 2010 (Ex. V); Melissa Korn & Nathan Becker, *Conn. Launches Probe of CVS Caremark*, Wall St. J., June 23, 2010 (Ex. W).[4]

Thus, in August 2010, the news media provided specific notice that, before

---

[4] *See also Conn.'s Attorney General Subpoenas CVS Caremark Because of Company's Threat to End Discount Drug Program*, Int'l Bus. Times, June 23, 2010 (Ex. X); Alexander Soule, *State Demands Documents from CVS Caremark*, Fairfield Cty. Bus. J., July 5, 2010 (Ex. Y).

the change in Connecticut law, Rite Aid had <u>not</u> been reporting the reduced prices available through the Rx Savings Program to Medicaid.  As reported in the news media, Connecticut's Attorney General subpoenaed Rite Aid and CVS to obtain information regarding the administration of their membership discount programs and the threatened changes in response to the new law.  Exs. R-Y.

On May 3, 2011, Relator Azam Rahimi, who has never worked for Rite Aid, filed this action claiming that Rite Aid supposedly overcharged Medicaid and certain other publicly funded health care programs by allegedly billing them more than the reduced prices available through the Rx Savings Program.  Compl. (ECF 1) ¶¶ 4, 41.[5]  Rahimi has produced documents appearing to show that on May 2, 2011, he provided the federal government and the state plaintiffs with information regarding his allegations.  Ex. Z (email to government).[6]

In this pre-suit disclosure, Rahimi stated that he first started considering this case "in or about" September 2010—the same month the substantively identical *Garbe v. Kmart qui tam* action was unsealed and a month after the widespread publicity regarding Rite Aid's reaction to Connecticut's new law.  Ex. Z (Decl.

---

[5] Rahimi has amended his complaint three times, but the underlying factual allegation remains the same:  Rite Aid supposedly overcharged Medicaid and certain other publicly funded health care programs by allegedly billing them more than the reduced prices available through the Rx Savings Program. *See, e.g.*, Third Amended Complaint ("TAC") (ECF 71) ¶¶ 5, 91.

[6] The Court may consider this communication, which was referenced in the Complaint. *See Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007); *Chattanooga-Hamilton*, 782 F.3d at 265.

-11-

¶ 3).  He also attached Rite Aid's publicly disclosed advertisements stating that "[p]rescriptions paid for in whole or in part by publicly funded health care programs are ineligible" for the Rx Savings Program's reduced prices.  Ex. Z (Decl. Exhibit B).  He acknowledged that these advertisements alerted him to the supposed fraud.  Ex. Z (Decl. ¶ 3).

## ARGUMENT

## I.   RAHIMI'S FCA CLAIM FAILS UNDER THE PUBLIC DISCLOSURE BAR

To "discourage opportunistic plaintiffs from bringing parasitic lawsuits," (*U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 507 (6th Cir. 2009)), the FCA bars *qui tam* actions where "substantially the same allegations or transactions as alleged in the action" were previously "publicly disclosed," unless the action is brought by "an original source of the information."  31 U.S.C. § 3730(e)(4)(A). "The public disclosure bar provides 'a broad sweep' and is wide-reaching, in part, because [t]he phrase 'allegations and transactions' . . . [has] a broad meaning." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 408 (2011).

Thus, "[t]o state a *qui tam* claim, a plaintiff must show that it uncovered the claim—that the factual basis of the claim was not publicly disclosed before the plaintiff sued."  *U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 429 (6th Cir. 2016) ("*ABLE*").  "A claimant may establish eligibility to bring a *qui tam* lawsuit on one of two grounds: (1) the factual premise

of its claim was not publicly disclosed before it filed the lawsuit, or (2) even if it was, that the claimant was the original source of the information." *Id.* at 430.

In the Sixth Circuit, this analysis involves three questions: (i) whether there was a previous public disclosure of the factual allegation(s) underlying the claim; (ii) whether the *qui tam* complaint is "based upon" the public disclosure; and (iii) whether the relator is an "original source." *Poteet*, 552 F.3d at 511.  If the answer is "yes" to the first two questions and "no" to the last question, the FCA claim must be dismissed under the public disclosure bar.[7]  As demonstrated below, such a dismissal is required here.

> ### A.     Before Rahimi Filed Suit, There Were Public Disclosures of the Allegation that Rite Aid Was Not Offering Its Rx Savings Program Prices to Publicly Funded Health Care Programs

The Sixth Circuit has held that prior public disclosures will bar a *qui tam* FCA claim "if the information is sufficient to put the government on notice of the likelihood of related fraudulent activity."  *Poteet*, 552 F.3d at 512.  Put differently, "[a]ll that is required is that public disclosures put the government on notice to the possibility of fraud."  *Dingle*, 388 F.3d at 214.  The law is well settled that the

---

[7] Congress amended the public disclosure bar in March 2010, and that amendment was not retroactive.  *ABLE*, 816 F.3d 430.  As Rahimi alleges fraud both before and after March 2010, we address the amendment as relevant.  Because the public disclosure bar pre-amendment was jurisdictional and post-amendment is not (*id.* at 433), Rite Aid moves to dismiss Rahimi's FCA claim arising from (i) alleged pre-amendment conduct under Fed. R. Civ. P. 12(b)(1) and (ii) alleged post-amendment conduct under Fed. R. Civ. P. 12(c).

publicly disclosed information barring a *qui tam* claim may come from multiple, different sources and disclosures.  *Poteet*, 552 F.3d at 512; *Dingle*, 388 F.3d at 214.   Here, the prior public disclosures were more than "sufficient to put the government on notice of the likelihood" that Rite Aid was not charging publicly funded health care programs the reduced Rx Savings Program prices.

Before 2011, Rite Aid repeatedly and publicly disclosed on its website and in the national press that "[p]ersons receiving benefits from publicly funded health care programs are ineligible" for membership in the Rx Savings Program, and that "[p]rescriptions paid for in whole or in part by publicly funded health care programs are ineligible" for the discounted prices available through the Rx Savings Program.  Exs. D-J (emphasis added); *see also Harper*, 2015 WL 7575937, at *7 ("[P]ress releases, available on [defendant's] publicly accessible website, also qualify as public disclosures by the media.") *aff'd*, 842 F.3d 430 (6th Cir. 2016); *U.S. ex. rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 813-14 (11th Cir. 2015) ("*Osheroff/Humana*") (affirming dismissal under the public disclosure bar where factual allegations had been publicly disclosed in advertisements and on defendant's publicly accessible website); *U.S. ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 732–33 (M.D. Tenn. 2013) ("*Osheroff/HealthSpring*") ("information on readily accessible public websites constitutes public disclosure") (collecting cases).

-14-

Moreover, in August 2010, the national and local news media extensively reported that after Connecticut passed a law requiring pharmacies to charge Connecticut Medicaid the same reduced prices offered through their membership discount programs, Rite Aid raised its Rx Savings Program prices in only Connecticut, which led to an investigation by the Connecticut Attorney General. *See* Exs. R-Y. This press coverage confirmed that before the new Connecticut law, Rite Aid had not been reporting its reduced Rx Savings prices to Medicaid.

Taken together, these news stories along with Rite Aid's press releases, advertisements, and website disclosures were more than sufficient to put the government on notice of the "likelihood" that Rite Aid was not submitting its reduced Rx Savings Program prices to Medicaid and the other publicly funded health care programs at issue. *See, e.g.*, *Winkelman v. CVS*, 827 F.3d at 210; *Osheroff/Humana Inc.*, 776 F.3d 813-14; *Osheroff/HealthSpring*, 938 F. Supp. 2d at 733-34.

*Winkelman v. CVS* is particularly instructive. In that case, the First Circuit affirmed dismissal under the public disclosure bar of a *qui tam* lawsuit against CVS that was based on substantively identical allegations to those here (*i.e.*, CVS failed to submit its membership discount prices to publicly funded health care programs). The First Circuit held that the publicity regarding CVS's threat to end its membership discount program in Connecticut as a result of the new law

discussed above was sufficient to put the government on notice of the allegation that CVS was not submitting the reduced membership prices to Medicaid programs and Medicare Part D.  827 F.3d at 209-13 ("When it is already clear from the public disclosures that a given requirement common to multiple programs is being violated and that the same potentially fraudulent arrangement operates in other states where the defendant does business, memorializing those easily inferable deductions in a complaint does not suffice to distinguish the relators' action from the public disclosures").

The publicity regarding Rite Aid's response to Connecticut's new law is substantively identical to the CVS press coverage, references the CVS press coverage, and discusses the two chain pharmacies' reactions.  Exs. R-Y.  Indeed, the aggregate public disclosures here are even more conspicuous than what the First Circuit held sufficient in *Winkelman v. CVS*:  Rite Aid's website disclosures and advertisements stated that the Rx Savings Program discounts were not available on "<u>prescriptions paid for in whole or in part by publicly funded health care programs</u>."  Exs. D-J.

In light of the public disclosures discussed above, no further analysis is needed to conclude there was a sufficient pre-suit disclosure of Rite Aid's supposed fraud to bar this *qui tam* action.  But, in case there is any doubt, the OIG-HHS's 2010 and 2011 Work Plans (announced in 2009 and 2010,

respectively) and related press coverage show that the federal government was actually on notice of the supposed fraudulent conduct alleged here. Those reports specifically announced an investigation into whether "large chain pharmacies are billing Medicaid [and Medicare Part D] the usual and customary charges for drugs provided under their retail discount generic programs." Exs. O-P (emphasis added). During that time-period, Rite Aid was the third largest chain pharmacy in the country and—as set forth above—its Rx Savings Program was reported about in the news media and prominently advertised by Rite Aid (including that the reduced membership prices were unavailable on prescriptions covered by publicly funded health care programs). *See* Compl. (ECF 1) ¶¶ 19, 41, Ex. A; Exs. A-J. In other words, the public disclosures discussed above were not only "sufficient to put the government on notice of [the supposed fraud]," they apparently did.

Moreover, courts have held that public disclosures regarding alleged industrywide fraud like those in the OIG-HHS's Work Plans trigger the public disclosure bar if, like here, the disclosures contain sufficient information to provide notice of the defendant's potential involvement. *See, e.g.*, *U.S. ex rel. Lager v. CSL Behring, L.L.C.*, 855 F.3d 935, 946 (8th Cir. 2017); *In re Natural Gas Royalties*, 562 F.3d 1032, 1042 (10th Cir. 2009); *U.S. ex rel. Gear v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 728-29 (7th Cir. 2006); *U.S. ex rel. Morgan v. Express Scripts, Inc.* No. 2:05-CV-1714 DMC JAD, 2013 WL 6447846,

at *12 (D.N.J. Dec. 9, 2013), *aff'd sub nom. U.S. v. Express Scripts, Inc.*, 602 F. App'x 880 (3d Cir. 2015); *U.S. ex rel. Hastings v. Wells Fargo Bank Nat'l Ass'n (Inc.)*, No. 12-cv-03624 DDP SSX, 2014 WL 3519129 (C.D. Cal. July 15, 2014), *aff'd*, 656 F. App'x 328 (9th Cir. 2016).  Although it is unnecessary for the Court to reach this issue given the sufficiency of the Rite Aid-specific disclosures, the general disclosures in the OIG-HHS Work Plans, read in conjunction with the other public disclosures discussed above, provide an independent basis to bar Rahimi's claims.

### B.    Rahimi's Claim Is "Based Upon" the Public Disclosures

"[A] complaint is 'based upon' a public disclosure when it is 'supported by' the previously disclosed information."  *Poteet*, 552 F.3d at 514 (internal citations omitted); *see also Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 975 (6th Cir. 2005) ("we have construed 'based upon' broadly to mean 'supported by' information previously disclosed").  "Any action based <u>even partly</u> upon public disclosures will be jurisdictionally barred."  *Poteet*, 552 F.3d at 514 (emphasis in original) (internal citations omitted).  Here, this standard is easily satisfied.  *See Winkelman v. CVS*, 827 F.3d at 208-11 (finding substantially similar *qui tam* action barred by substantially similar public disclosures).

The factual allegation underlying Rahimi's claim is that Rite Aid did not charge Medicaid and certain other publicly funded health care programs the

reduced prices available to members of the Rx Savings Program.  *E.g.*, Compl. (ECF 1) ¶¶ 4, 40-41 (alleging "the reduced prices [offered to members of the Rx Savings Program were] <u>not</u> available for prescriptions funded in whole or in part by publicly funded health care programs such as Medicaid" (emphasis in original)).  Not only is this factual allegation "supported by the previously disclosed information," it is essentially identical.  In fact—in "support" of his claim—Rahimi attached the publicly disclosed advertisement for the Rx Savings Program and specifically quoted the disclosure therein that the program's reduced prices are not available for "prescriptions paid for in whole or in part by publicly funded health care programs."  Compl. (ECF 1) ¶¶ 41-42, Ex. A.

## C.    Rahimi Is Not an "Original Source"

The March 23, 2010 amendment to the FCA changed the definition of an "original source."  Rahimi is not an original source under either version.

### 1.    Pre-Amendment Version of the FCA

To be an original source under the pre-amendment version of the FCA's public disclosure bar, a relator needed both to have "direct and independent knowledge of the information on which the allegations are based" and to have disclosed that information to the government "<u>prior to any public disclosure</u>." *Poteet*, 552 F.3d at 515.  Rahimi is not an original source under this version because he did not provide any information regarding his allegations to the

government until May 2, 2011—well after the public disclosures. Moreover, as discussed below, the information that Rahimi ultimately did provide was <u>not</u> based on his "direct and independent knowledge" of the alleged fraud (he had none).

### 2. Post-Amendment Version of the FCA

Following the March 23, 2010 amendments, the FCA provides an additional basis for qualifying as an original source if the relator has "independent" knowledge that "materially adds to" the public disclosure and discloses it to the government before filing the *qui tam* action. 31 U.S.C. § 3730(e)(4)(B) (Post-March 23, 2010). *Qui tam* complaints that provide "additional details are insufficient to avoid [the Sixth Circuit's] broad construction of the public disclosure bar, which precludes individuals who base <u>any part</u> of their allegations on publicly disclosed information from bringing a later *qui tam* action." *ABLE*, 816 F.3d at 432 (emphasis in original).

Nothing in Rahimi's complaint or the information he allegedly provided to the government "materially adds" to the publicly disclosed allegation that Rite Aid was not submitting the reduced Rx Savings membership prices to publicly funded health care programs. The only documents cited in his complaint and provided to the government before filing were (i) publicly disclosed Rx Savings Program advertisements that stated "[p]rescriptions paid for in whole or in part by publicly funded health care programs are ineligible" for the program's reduced prices and

(ii) two receipts apparently showing that—consistent with Rite Aid's public disclosure—it did not charge the reduced Rx Savings Program price for prescriptions paid for by Medicaid. *See* Compl. (ECF 1) ¶¶ 46-47; Ex. Z (Decl. ¶¶ 7-8). Likewise, Rahimi's alleged phone calls to Rite Aid pharmacies merely confirmed Rite Aid's public disclosure that the reduced Rx Savings Program prices were not available on prescriptions covered by Medicaid. *See* Compl. (ECF 1) ¶¶ 49-71; Ex. Z (Decl. ¶¶ 13-16).

At most, Rahimi's allegations and the documents provided to the government "merely 'add[] details' to what is already known in outline," which is not enough to qualify him as an "original source." *See ABLE*, 816 F.3d at 432 (holding relator not original source); *see also Winkelman v. CVS*, 827 F.3d at 211-213 (holding relator not original source, "a relator who merely adds detail or color to previously disclosed elements of an alleged scheme is not materially adding to the public disclosures").

Even if his allegations had materially added to the public disclosures (they did not), Rahimi would still not be an "original source" because those allegations were not based on his "direct" or "independent" knowledge. In ruling that the Second Amended Complaint (ECF 44) failed to plead any claims with the requisite particularity, this Court recognized that Rahimi, who never worked for Rite Aid, "does not have personal, specific knowledge of the [alleged] scheme." *U.S. ex rel.*

*Rahimi v. Rite Aid Corp.*, No. 2:11-11940-SJM, 2018 WL 1744796, at \*5 (E.D. Mich. Apr. 11, 2018). In his pre-suit disclosure to the government, Rahimi admitted he first started considering this case in September 2010—the same month the substantively identical *Garbe v. Kmart qui tam* action was unsealed and a month after the widespread publicity regarding Rite Aid's reaction to Connecticut's new law. Ex. Z (Decl. ¶ 3). He further conceded that he was alerted to the supposed fraud by the statements in Rite Aid's publicly disclosed advertisements that prescriptions paid for by publicly funded health care programs were ineligible for the Rx Savings Program discounts. *Id.* ("I learned that Rite Aid advertises a savings program, called the Rx Savings Program, which on its face excludes prescriptions covered by public health care programs such as Medicare and Medicaid"); Ex. Z (Decl. Exhibit B).

Nor does the information supposedly provided by his friend—alleged former Rite Aid employee "John Doe"—qualify Rahimi as an "original source." *See U.S. ex rel. McNulty v. Reddy Ice Holdings, Inc.*, 835 F. Supp. 2d 341, 351 (E.D. Mich. 2011) ("A relator's knowledge 'must not be derivative of the information of others, even if those others may qualify as original sources.'") (citation omitted). Moreover—as set forth in Rahimi's pre-suit disclosure—he first communicated with John Doe <u>after</u> Doe's alleged employment with Rite Aid had ended (Ex. Z (Decl. ¶ 4)), and Doe simply parroted the information that had been publicly

disclosed in Rite Aid's press releases and advertisements: (i) prescriptions covered by Medicare Part D or Medicaid were not eligible for the Rx Savings Program's reduced prices (*id.* ¶¶ 6-7); (ii) the Rx Savings Program's reduced prices were only available to customers that were enrolled in the program (*id.* ¶ 10); (iii) Medicaid and Medicare Part D beneficiaries were not eligible for the program (*id.*); and (iv) Rite Aid offered the Rx Savings Program nationwide (*id.* ¶ 11). *See, e.g.*, Exs. D, H (Rite Aid press release and advertisement making same disclosures). In short, the information attributed to Doe was not even based on Doe's "independent" knowledge. *See Rahimi*, 2018 WL 1744796, at *5 ("the SAC is devoid of assertions that Doe had personal, specific knowledge of [Rite Aid's] billing practices similar to that described in *Prather* and *Ibanez*").

Accordingly, none of the information that Rahimi provided to the government before filing this *qui tam* action was based on his "independent" or "direct" knowledge of the purported fraud. *See, e.g.*, *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 283 (7th Cir. 2016) (affirming dismissal under public disclosure bar and holding that to qualify as an original source, "the relator must be someone who would have learned of the allegation or transactions independently of the public disclosure"); *McNulty*, 835 F. Supp. 2d at 351. For this additional reason, Rahimi is not an "original source" under either the pre- or the post-amendment version of the FCA. *See* 31 U.S.C. 3170(e)(4).

Rahimi's FCA claim (Count One in TAC) should be dismissed.

## II.   THE COURT SHOULD DISMISS RAHIMI'S STATE LAW CLAIMS

In addition to his FCA claim, Rahimi asserts 18 claims under analogous state false claim statutes. *See* TAC (ECF 71) ¶¶ 161-96 (Counts Two through Nineteen in TAC).  All of those statutes contain a public disclosure bar that is substantively identical to the FCA's public disclosure bar,[8] and Rahimi's state law claims should be dismissed for the same reasons as his FCA claim.  *See, e.g.*, *U.S. ex. rel. Stratienko v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 958 F. Supp. 2d 846, 855-64 (E.D. Tenn. 2013) (dismissing FCA and state law claim based on same analysis); *U.S. ex rel. Ribik v. HCR ManorCare, Inc.*, No. 1:09-CV-00013, 2017 WL 3471426, at *2 (E.D. Va. Aug. 10, 2017) (dismissing FCA and 15 state law claims based on same analysis).

Alternatively, the Court should decline to exercise supplemental jurisdiction over these state law claims after dismissing the FCA claim.  *See, e.g.*, *U.S. ex rel. Armes v. Garman*, 719 F. App'x 459, 465 (6th Cir. 2017) (affirming district court's refusal to exercise supplemental jurisdiction over "[relator's] state-law claims after

---

[8] *See* Cal. Gov't Code § 12652; Colo. Rev. Stat. Ann. § 25.5-4-306; Conn. Gen. Stat. Ann. § 17b-301i; Del. Code Ann. tit. 6, § 1206; D.C. Code Ann. § 2-381.01; Ga. Code Ann. § 49-4-168.2; Ind. Code Ann. § 5-11-5.5-7; La. Stat. Ann. § 46:439.1; Mass. Gen. Laws Ann. ch. 12, § 5G; Mich. Comp. Laws Ann. § 400.610a; Nev. Rev. Stat. Ann. § 357.100; N.J. Stat. Ann. § 2A:32C-9; N.Y. State Fin. Law § 190; N.C. Gen. Stat. Ann. § 1-611; 9 R.I. Gen. Laws Ann. § 9-1.1-4; Tenn. Code Ann. § 71-5-183; Va. Code Ann. § 8.01-216.8; Wash. Rev. Code Ann. § 74.66.080.

dismissing his federal claims" and recognizing that "generally, if the federal claims are dismissed before trial the state claims should be dismissed as well" (*citing Hankins v. The Gap, Inc.*, 84 F.3d 797, 803 (6th Cir. 1996))).

## <u>CONCLUSION</u>

Rite Aid respectfully requests that the FCA claims based on its alleged pre-March 23, 2010 billing practices be dismissed for lack of subject matter jurisdiction and that judgment on the pleadings be entered on all remaining claims.

Dated:  July 31, 2019

*/s/ Kevin J. Biron*
Eric W. Sitarchuk
Kelly A. Moore
John K. Gisleson
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone:  (215) 963-5000
Eric.Sitarchuk@morganlewis.com
Kelly.Moore@morganlewis.com
John.Gisleson@morganlewis.com
Kevin.Biron@morganlewis.com

Thomas G. McNeill (P36895)
Robert P. Zora (P74231)
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Ste. 4000
Detroit, MI 48226
Telephone: (313) 223-3632
TMcNeill@dickinsonwright.com
RZora@dickinsonwright.com

*Attorneys for Defendant Rite Aid Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Judgment on the Pleadings along with all supporting papers was served via Electronic Court Filing on all counsel of record on July 31, 2019.

/s/ Michael J. Ableson
Michael J. Ableson