# Morgan Lewis

**Kevin J. Biron**
Partner
+1.212.309.6000
kevin.biron@morganlewis.com

October 21, 2019

**VIA ECF**

The Honorable Judge Stephen J. Murphy, III
Theodore Levin U.S. Courthouse
231 W. Lafayette Blvd., Room 210
Detroit, MI 48226

Re:  Discovery Disputes in *U.S. ex rel. Rahimi v. Rite Aid*, No. 2:11-cv-11940 (E.D. Mich.)

Dear Judge Murphy:

We write in response to Relator Azam Rahimi's letter, dated October 10, 2019 (ECF No. 113-11) (cited as "Ltr. []" and exhibits thereto cited as "P-Ex. []"), regarding certain open discovery issues. As a threshold matter, the Court need not address any of the issues raised in Rahimi's nine-page, single-spaced, 12-point font letter because, as demonstrated in connection with Rite Aid's motion to dismiss and for judgment on the pleadings (ECF No. 104), Rahimi's claims fail under the relevant public disclosure bars. In any event, it appears that many of the issues raised by Rahimi are based on misunderstandings as to Rite Aid's positions and can be easily resolved. With respect to the remaining issues, Rahimi is not entitled

Morgan, Lewis & Bockius LLP

One Oxford Centre
Thirty-Second Floor
Pittsburgh, PA  15219-6401         ☏ +1.412.560.3300
United States                      ✆ +1.412.560.7001

Kevin Biron
October 21, 2019
Page 2

to the relief sought in the letter.

# BACKGROUND

A.    Rahimi's Allegations

In 2008, Rite Aid created a membership discount program, called the Rx Savings Program ("RSP"), that provided members with reduced prices on prescription drugs. In this action, Rahimi alleges that (i) if a pharmacy had a membership discount program, the billing rules for certain publicly funded health care programs supposedly required the pharmacy to report the reduced membership prices as its "usual and customary" ("U&C") price; and (ii) Rite Aid purportedly violated the U&C billing rules by failing to charge those health care programs the reduced prices made available to members of the RSP. Third Amended Complaint (ECF No. 71) (cited as "TAC") ¶¶ 2-5.

Rite Aid rejects Rahimi's meritless allegations. The evidence will show that Rite Aid complied with the billing rules and that the relevant health care programs continued to reimburse Rite Aid as requested after they had actual knowledge that Rite Aid was not submitting the discounted RSP prices as its U&C price. And, when a state's laws actually required Rite Aid to bill the RSP price (such as when a legislature amended its Medicaid statue to require pharmacies to report discounted membership prices), Rite Aid did so. *See* ECF No. 104.

Kevin Biron
October 21, 2019
Page 3

B.    Pace of Discovery

Although irrelevant to any issue raised in his letter, Rahimi attempts to cast aspersions on Rite Aid by falsely claiming it has been delaying discovery. Ltr. 1-2. Rite Aid briefly addresses Rahimi's "[t]wo examples."

First, Rahimi complains that Rite Aid engaged in delay because it did not respond to issues raised during a June 9th meet and confer until three weeks later. Ltr. 1. Rahimi fails to mention that the June 9th meet and confer raised more than a dozen substantive discovery issues, many of which required counsel to consult with Rite Aid personnel before providing a response. And, during the same three-week period, the parties were actively negotiating numerous other discovery issues, including the appropriate Rite Aid document custodians and search terms for electronically-stored information ("ESI"), as well as Rahimi's request for more than a decade's worth of prescription and claims data for every Rite Aid-branded pharmacy in the country (an enormous amount of data). When placed in this context, Rite Aid's response time was clearly reasonable.

Rahimi also complains that Rite Aid supposedly took "44 days" to respond to a proposed list of additional document custodians. Ltr. 1-2. This is a mischaracterization. On June 28th, Rite Aid sent Rahimi a list of 13 proposed Rite Aid document custodians. Rahimi responded on July 10th by demanding an additional 23 Rite Aid document custodians (for a total of 36). Rahimi did not

Kevin Biron
October 21, 2019
Page 4

provide an explanation as to why he believed those individuals' ESI should be searched until July 24th. After Rite Aid conducted the necessary diligence concerning the proposed custodians (many of whom had not worked at Rite Aid for many years), it provided a substantive response to Rahimi's proposal on August 23rd, identifying certain custodians it was willing to add. During this same period, the parties were also addressing numerous other discovery issues.

In short, the parties have made significant progress over the past five months. During that time period, Rite Aid has made six productions totaling more than 217,000 documents. Rite Aid is currently reviewing hundreds of thousands of documents returned by the agreed upon search terms and will make rolling productions as that review moves forward. In addition, Rite Aid is working to collect the records for hundreds of millions of prescription drug transactions requested by Rahimi. By contrast, Rahimi has produced 25 documents (and no privilege log). Any suggestion that Rite Aid is not complying with its discovery obligations is misplaced.

C. Issues Raised in Rahimi's Letter

Rahimi served his second request for production of documents on April 23, 2019 (P-Ex. B; each request referred to herein as "RFP No. []"), and Rite Aid served its responses and objections on May 23, 2019 (attached hereto as D-Ex. A). The parties resolved many issues, but Rahimi refused to accept certain of Rite

Kevin Biron
October 21, 2019
Page 5

Aid's proposals and decided to raise them to the Court. The parties had a call with the Court on September 26th, during which Your Honor instructed the parties to attempt to work out their differences and—if unsuccessful—stated that Rahimi could file a letter identifying the remaining issues. Thereafter, the parties exchanged written communications regarding their positions, and Rite Aid offered to meet and confer. Rahimi did not accept Rite Aid's offer and filed his letter.[1]

## ARGUMENT

For the reasons set forth below, Rahimi's requests should be denied.

### I. Time Period

Rite Aid launched the RSP in test markets in mid-2008 and nationwide in September 2008. Rite Aid has agreed to collect and produce documents from a ten-year time period: January 1, 2007 to January 19, 2017 (*i.e.*, the date this action was unsealed). Therefore, Rite Aid has agreed to collect and produce documents that predate the launch of the RSP by *over a year*.

Rahimi originally requested that Rite Aid review and produce documents from January 1, 2006 onward, but recently changed the proposed start date to September 1, 2006. Rite Aid rejected that proposal because it had already agreed to

---

[1] The parties had scheduled a meet and confer for Wednesday, October 2nd, but on October 1st Rahimi canceled and asked Rite Aid to propose times for a meet and confer on Friday, October 4th. Rite Aid informed Rahimi of its availability, but never heard back. Rahimi made no further attempt to meet and confer with Rite Aid before filing his letter.

Kevin Biron
October 21, 2019
Page 6

search documents covering a ten-year time period, and there was no reason to believe that there would have been a relevant communication *two years* before the nationwide launch of the RSP that was not once repeated, referenced, attached or incorporated into any documents between January 2007 and September 2008. Indeed, the documents attached to Rahimi's letter show that Rite Aid was discussing what became the RSP in late-2007. *See* P-Ex. H.

Moreover, Rahimi never previously informed Rite Aid that his purported reason for demanding communications from September 2006 onward is because of a September 2006 Rite Aid earnings call. Based on this new information, we have conferred with Rite Aid and determined that it likely does not have any emails from before 2007. We are confirming this.

**II.      RFP No. 3**

In RFP No. 3, Rahimi requested "[a]ll Documents relating to the RSP" and identified several subcategories. P-Ex. B at 9. Rite Aid objected to this RFP because, *inter alia*, it was "overly broad" and called for the production of irrelevant documents. D-Ex. A at 15-16. After meeting and conferring, Rite Aid made a comprehensive compromise proposal (P-Ex. C). Rahimi rejected that proposal and now asks the Court to compel production of all documents responsive to RFP No. 3, as written. Ltr. 4-5. The Court should deny this request.

First, Rahimi states Rite Aid "has agreed only to produce a limited set of

Kevin Biron
October 21, 2019
Page 7

documents it will handpick" regarding Rahimi's requests for "(a) documents about [RSP] eligibility; (b) documents regarding training and guidance about the [RSP]; [and] (c) documents reflecting changes or potential changes to the [RSP] documents about [RSP] eligibility." *Id.* 4. This is untrue. Rite Aid is not "handpick[ing]" a limited set of documents it will produce.[2]

To the contrary, Rite Aid has already identified certain responsive documents that it was able to collect without the use of ESI search terms, and will produce (or has already produced) those documents without limiting them. And, to the extent Rite Aid locates additional responsive documents during discovery (including documents returned by the ESI searches), it will produce those documents. There appears to be no dispute here requiring Court intervention.

Second, Rahimi also incorrectly claims that Rite Aid has refused to produce any "documents concerning complaints or questions about the [RSP]." Ltr. 4. In fact, Rite Aid has been producing documents responsive to this RFP that were returned by the ESI search terms, and several such documents were included in a production Rite Aid made on October 4th. Again, there appears to be no dispute here requiring Court intervention.

---

[2] Rahimi's misunderstanding apparently arose from Rite Aid's proposal to produce "Documents sufficient to show [or describe]" certain topics in response to Rahimi's request for "[a]ll Documents concerning" those topics. *See* Ltr. 4.

<u>Third</u>, Rahimi asks the Court to compel Rite Aid to produce "[d]ocuments concerning compliance of the [RSP] with any governmental or contractual rules or requirements." P-Ex. B at 9 (RFP No. 3(b)); Ltr. 4-5. This request is overbroad as it calls for documents concerning the RSP's compliance with "<u>any</u> governmental or contractual rules," including those having nothing to do with submitting claims to the publicly funded health care programs at issue (or any other issue relevant to a claim or defense). Thus, in response, Rite Aid agreed to produce only documents "concerning compliance of the [RSP] with any government or contractual rules or requirements <u>concerning claims for prescription drugs paid in whole, or in part, by [the publicly funded healthcare programs at issue in the TAC]</u>." P-Ex. C. Put differently, Rite Aid agreed to produce potentially *relevant*, responsive documents.

Although unclear, Rahimi, for the first time, appears to agree to limit this request to documents regarding compliance with rules/requirements <u>concerning claims for prescription drugs</u>, but asks the Court to compel Rite Aid to produce documents concerning the billing rules of not only the publicly funded health care programs at issue, but also "private pay programs" (*e.g.*, private insurance as opposed to publicly funded Medicaid). Ltr. 4. Rite Aid's billing requirements for those private pay programs are governed solely by contracts between Rite Aid and the relevant non-government entities. Documents regarding those contractual billing requirements are <u>not relevant</u> to any claim in this litigation, which only

Kevin Biron
October 21, 2019
Page 9

concerns whether Rite Aid complied with the billing rules of the publicly funded health care programs at issue.

Finally, Rahimi contends that Rite Aid should simply produce "all documents mentioning the [RSP]"—regardless of sender, recipient, or subject matter—because there would purportedly be "no additional burden." Ltr. 5. Rahimi misses the mark. Regardless of burden, Rite Aid has no obligation to produce irrelevant documents (FRCP 26(b)), and many documents "mentioning the [RSP]" fall squarely in that category. Moreover, if the Court were to accept this baseless proposal, Rite Aid would be required to re-review thousands of documents.

### III. RFP Nos. 16, 22 and 23

Rahimi states that "[a]lthough [RFP Nos. 16, 22 and 23 were] initially drafted more broadly, [he] is now seeking all documents regarding Rite Aid's non-compliance with U&C rules and investigations or liability relating to U&C rules." Ltr. 5. As Rite Aid has informed Rahimi, these modified requests are overbroad and encompass irrelevant documents because this case is not about Rite Aid's *general* compliance with *any* U&C billing rules. Rather, Rahimi alleges Rite Aid violated the U&C billing rules for the publicly funded health care programs at issue by supposedly failing to submit its discounted RSP prices. Thus, Rite Aid agreed to search for and produce documents responsive to Rahimi's modified request that concern both those billing rules and the RSP (*e.g.*, any documents

Kevin Biron
October 21, 2019
Page 10

concerning whether and how the discounted RSP prices should be considered in determining its U&C price). D-Ex. A at 26, 30-32; P-Ex. C at 5-6. The Court should deny Rahimi's overreaching request to compel Rite Aid to expand its search and production to include any documents over a 10-year period that concern *any* potential issues with *any* U&C billing rules, including the irrelevant contractual billing rules of "private pay programs."

The cases cited by Rahimi (Ltr. 5) do <u>not</u> support his position because neither case held that prior, unrelated conduct was evidence of scienter. *See U.S. S.E.C. v. Fehn*, 97 F.3d 1276, 1293 (9th Cir. 1996); *In re Focus Enhancements, Inc. Sec. Litig.*, 309 F. Supp. 2d 134, 159 (D. Mass. 2001).

**IV.   RFP No. 18**

In RFP No. 18, Rahimi requested "[a]ll Documents concerning Discount Programs for prescription drugs offered by Rite Aid's competitors." P-Ex. B at 12; D-Ex. A at 27-28. After meeting and conferring, Rite Aid agreed to produce responsive documents that relate to both the RSP and other chain pharmacies' membership discount programs. P-Ex. C at 6. Rahimi now incorrectly claims that Rite Aid "refuses to produce documents analyzing its competitors' discount drug programs, except to the extent such documents also <u>mention</u> Rite Aid's program" Ltr. 6 (emphasis added). Rite Aid will obviously produce documents analyzing another chain pharmacy's discount program in connection with discussing the

Kevin Biron
October 21, 2019
Page 11

concept that became the RSP, regardless of whether such document "mentions" the phrase "Rx Savings Program." This should address Rahimi's concern that there may be responsive documents relating to the development of the RSP that, because they "precede the implementation of the Rx Savings Program, [] <u>necessarily do not mention that program</u>." *See* Ltr. 6 (emphasis in original). Again, there does not appear to be a dispute here requiring the Court's intervention.

V.    **RFP No. 4**

In RFP No. 4, Rahimi requested "[a]ll Documents concerning how Rite Aid set the prices for prescription drugs it sold [over a 10-year period]" and identified several subcategories. P-Ex. B at 9. Rite Aid objected to this RFP as, *inter alia*, "overly broad," "not proportional to the needs of the case," and calling for the production of irrelevant documents because this case is <u>not</u> about "how Rite Aid set the prices for prescription drugs it sold." *See* D-Ex. A at 16-17. Rather, again, it is about Rahimi's claim that Rite Aid violated the U&C billing rules for certain publicly funded health care programs by not submitting the discounted RSP prices.

Thus, consistent with what this case is actually about and contrary to Rahimi's assertion that Rite Aid "flatly refuses to produce" any responsive documents (Ltr. 6-7), Rite Aid agreed to produce the following in response to this RFP: (i) documents concerning "whether and how the [RSP] should or should not affect prices to Third-Party Payors" (D-Ex. A at 16-17); and (ii) documents and/or

under-oath interrogatory responses sufficient to describe: (a) the manner in which Rite Aid determines the RSP pricing for generic prescription drugs on the RSP formulary, and (b) with respect to generic prescription drugs on the RSP formulary, the manner in which Rite Aid determines the U&C price(s) reported by Rite Aid in connection with claims paid in whole, or in part, by the publicly funded healthcare programs at issue (P-Ex. C at 4). In response to other RFPs, Rite Aid also agreed to (i) produce historical transaction data, which includes the U&C price Rite Aid reported, for all claims paid in whole, or in part, by a third-party payor, including all claims covered in whole, or in part, by the publicly funded health care program at issue; (ii) documents concerning whether and how the discounted RSP prices or other discounted prices affect or should affect the U&C prices reported by Rite Aid to the publicly funded health care programs at issue (RFP 13; D-Ex. A at 23-24; P-Ex. C at 3); and (iii) documents concerning the determination of the prescription drug prices that Rite Aid disclosed to publicly funded health care programs as its U&C price (RFP 21; D-Ex. A at 30). Thus, Rite Aid has agreed to produce broad categories of documents relevant to Rahimi's claim that Rite Aid should have submitted the RSP prices as its U&C price, including documents concerning which price to submit as its U&C price.

Rahimi, however, requests that Rite Aid also search for and produce documents concerning how it set its undiscounted retail prices over a ten-year

Kevin Biron
October 21, 2019
Page 13

period. Ltr. 6-7. In addition to being highly confidential, these documents are irrelevant. Rahimi's arguments to the contrary are baseless.

First, Rahimi claims these documents are somehow relevant because Rite Aid's supposed "motive" for creating the RSP in 2008 was "its belief that it was a business necessity to compete with Walmart and other pharmacies by offering cheap prescriptions to cash customers . . . but [wanted to] keep charging government payers more." Ltr. 7. This is a non-sequitur: documents concerning how Rite Aid set its retail prices through 2017 can have nothing to do with what Rite Aid's motives may have been for instituting the RSP in 2008. Moreover, Rite Aid <u>is producing</u> the documents concerning how and why it set up the RSP.

Second, Rahimi claims documents about how Rite Aid set its retail prices are relevant to assess whether "it would be 'difficult for Rite Aid to continue' offering the [RSP] if it was required to report the [RSP] prices as its U&C." Ltr. 7. But documents about how Rite Aid set its retail prices are wholly irrelevant to what would have happened if Rite Aid had been required to submit different prices as its U&C price. And, to the extent Rahimi wants to analyze what would have happened under this hypothetical scenario, he will have the relevant data. The historical claims data that Rite Aid is producing <u>includes, among other things, the U&C price submitted by Rite Aid on each transaction</u> (*e.g.*, <u>whether it was the RSP price or some other price) and the amount reimbursed to Rite Aid</u>. Thus, Rahimi

Kevin Biron
October 21, 2019
Page 14

will have the information to assess what would have happened if Rite Aid had submitted a different price as its U&C (*e.g.*, if/how that would have affected the amounts reimbursed to Rite Aid by the relevant government health care program).

**VII. RFP No. 19**

In RFP No. 19, Rahimi requested "[a]ll documents containing any analysis or evaluation of the impact of the [RSP], or proposed or actual change thereto, on Rite Aid's revenue, profit, or reimbursements." P-Ex. B at 12. Because Rahimi could not explain why such documents are relevant, Rite Aid stated that it would not search for and produce documents responsive to this RFP. Rahimi's relevance arguments, which are the same as its arguments with respect to documents concerning Rite Aid's retail pricing methodology, continue to ring hollow.

First, contrary to Rahimi's contention (Ltr. 7), documents containing analysis of the revenue, profit, or reimbursements from the RSP *after* it was implemented, by definition, cannot be relevant to assessing Rite Aid's motive for implementing the RSP.

Second, documents containing financial analysis of how the RSP was actually performing are not relevant to what would have happened if Rite Aid had been required to submit different prices as its U&C price. And, as set forth above, he will have the relevant data to do that hypothetical analysis.

Kevin Biron
October 21, 2019
Page 15

## VIII. Privilege Logs

Based on an inaccurate characterization of Rite Aid's position, Rahimi asks the Court to set deadlines for Rite Aid's production of privilege logs. Ltr. 8. This request is premature and should be denied. Rahimi claims that Rite Aid "refuses to produce logs on any time table, insisting it will do so when it feels appropriate." Ltr. 8. This is not Rite Aid's position, and it is telling that Rahimi did not submit the parties' most recent correspondence on this issue, but instead submitted correspondence from several weeks ago. *See* P-Ex. I.

As Rite Aid explained to Rahimi in an email dated October 3rd (attached hereto as D-Ex. B), any discussion regarding the timing of privilege logs is premature. The parties only recently agreed on a set of document custodians and search terms for Rite Aid's ESI, and Rite Aid has only recently begun reviewing the hundreds of thousands of documents returned by those search terms. Rite Aid does not presently have sufficient information to assess what proportion of those documents are either responsive or privileged. Once Rite Aid has that information, it will be able to meet and confer about the timing of privilege logs.

Furthermore, Rahimi's complaint that he supposedly had to "press" and "persuade" Rite Aid to produce a redaction log for its productions to date is, to say the least, hypocritical. Rahimi has only produced 25 documents in this action, and it is Rite Aid's understanding that Rahimi possesses additional relevant documents

but is withholding them on the grounds that they are purportedly immune from disclosure. Despite this, Relator has yet to produce a privilege log.

\* \* \*

For the foregoing reasons, Rite Aid respectfully requests that the Court deny the relief requested by Rahimi.

Respectfully,

*/s/ Kevin J. Biron*
Eric W. Sitarchuk
Kelly A. Moore
John K. Gisleson
Kevin J. Biron
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
Telephone: (215) 963-5000
Eric.Sitarchuk@morganlewis.com
Kelly.Moore@morganlewis.com
John.Gisleson@morganlewis.com
Kevin.Biron@morganlewis.com

Thomas G. McNeill (P36895)
Robert P. Zora (P74231)
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Ste. 4000
Detroit, MI 48226
Telephone: (313) 223-3632
TMcNeill@dickinsonwright.com
RZora@dickinsonwright.com

*Attorneys for Defendant Rite Aid Corporation*

cc: Counsel of Record (via ECF)